## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

MarkWest Liberty Midstream     :
and Resources, LLC,     :
             Appellant     :
    :
       v.     :
    :
Cecil Township     :    No. 1809 C.D. 2016
Zoning Hearing Board     :    Argued: April 6, 2017[1]


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                     FILED: March 23, 2018

       MarkWest Liberty Midstream and Resources, LLC (MarkWest)[2] appeals from the Washington County Common Pleas Court's (trial court) October 5, 2016 order affirming the Cecil Township (Township) Zoning Hearing Board's (Board) decision granting MarkWest's application for special exception subject to 26 conditions (Conditions). There are four issues before this Court: (1) whether the Board-imposed conditions exceed the Board's authority under the Pennsylvania Municipalities Planning Code (MPC)[3] and the Township's Unified Development

---

[1] Disposition on this appeal was stayed for the parties' joint request for mediation. *See* Internal Operating Procedure Section 501. On December 27, 2017, upon conclusion of mediation, this case was again assigned to the panel for disposition.

[2] References to MarkWest herein include MarkWest representatives.

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 - 11202.

Ordinance (UDO)[4] and, thus, violate this Court's September 26, 2014 order;[5] (2) whether the Board is authorized to impose standards separate and apart from the UDO regarding where a particular use may be located; (3) whether the Board's conditions are unduly restrictive and result in disparate treatment of MarkWest's proposed use without a reasonable basis; and, (4) whether certain of the Board's conditions are preempted by Pennsylvania Department of Environmental Protection (DEP) statutes and regulations. Upon review, we affirm in part and reverse in part.

## Background

MarkWest is a limited liability corporation that owns and operates midstream facilities which transport, compress and process oil, gas and other substances extracted from oil and gas wells. MarkWest operates gas compressor stations in Washington County, Pennsylvania.[6] Section 2 of Township Ordinance No. 2-2010 permits natural gas compressor stations that operate as midstream

---

[4] No. 5-00, May 17, 2000 (*as amended* October 8, 2007).

[5] In its Statement of Questions Involved, MarkWest's first three issues are: (1) whether the Board's authority is limited and defined by the MPC and the UDO; (2) whether the conditions imposed by the Board violate this Court's September 26, 2014 order by going beyond the confines of the UDO's criteria; and, (3) whether the Board's conditions exceed the Board's authority under the MPC and the UDO. Because these three questions relate to whether the Board exceeded this Court's order, which limited any conditions imposed to those permitted by the UDO and, by extension, the MPC, we have combined those three issues.

[6] MarkWest operates midstream facilities between the product producer and the end user. It does not drill or frac, but rather gathers, processes and moves 'rich gas' (which has a higher hydrocarbon content than dry gas) to market. At the Township property on which MarkWest applied to operate a compressor station, the gas will be drawn in from wells, water will be removed, and the compressed gas will be transported through pipelines to MarkWest's Houston processing facility, where hydrocarbon liquids will be removed (thereby producing propane and butane which have numerous industrial uses), and processed gas will be supplied to consumers.

*MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 552 n.2 (Pa. Cmwlth. 2014) (citations omitted).

2

facilities, so long as they are consistent with the Township's UDO which allows them by special exception.[7] *See* Reproduced Record (R.R.) at 460a-467a. On September 20, 2010, MarkWest executed an agreement to purchase a 71.5-acre undeveloped parcel of land (Property) from Richard Caruso located in the Township's I-1 Light Industrial District.

On November 29, 2010, MarkWest applied to the Board for a special exception under Section 911.D.1 of the Township's UDO to construct and operate a natural gas compressor station roughly in the center 15 acres of the Property. The proposed facility would consist of up to 8 compressor engines and surrounding sound structures, dehydration facilities, tanks, a vapor recovery unit, a flare and associated piping (Proposed Facility). The Property is adjacent to R-1 Low Density and R-2 Medium Density Residential Districts, but no residence would be closer than 1,000 feet from the Proposed Facility. Board hearings were held on January 17, January 31 and February 21, 2011. MarkWest submitted to the Board Proposed Findings of Fact and Conclusions of Law. *See* R.R. at 468a-482a. Thereafter, the Township issued 37 then-proposed conditions to which MarkWest responded.[8] *See* R.R. at 468a-494a.

---

[7] "A special exception is a use that is expressly permitted by the zoning ordinance, absent a showing of a detrimental effect on the community." *Morrell v. Zoning Hearing Bd. of the Borough of Shrewsbury*, 17 A.3d 972, 975 (Pa. Cmwlth. 2011).

"Natural gas compressor station" is defined by Township Ordinance 2-2010 as

> [a] facility designed and constructed to compress natural gas that originates from an Oil and Gas well or collection of such wells operating as a midstream facility for delivery of Oil and Gas to a transmission pipeline, distribution pipeline, Natural Gas Processing Plant or underground storage field, including one or more natural gas compressors, associated buildings, pipes, valves, tanks and other equipment.

Reproduced Record (R.R.) at 461a.

[8] The record is unclear as to precisely when MarkWest submitted its proposed findings and conclusions and its response to the Township's then-proposed conditions, but it appears this was done relative to the Board's 2011 proceedings.

On March 31, 2011, the Board denied MarkWest's special exception application on the basis that MarkWest failed to satisfy the UDO's requirements that the Proposed Facility would be of the same general character as other uses permitted in the I-1 Light Industrial District, and that its impact would be equal to or less than other permitted uses. On April 21, 2011, MarkWest appealed to the trial court from the Board's special exception application denial and exclusionary zoning challenge which was deemed denied. On May 20, 2011, Range Resources intervened as an owner or tenant of the Property on which the Proposed Facility would be constructed. The Township intervened on June 13, 2011.[9] On January 21, 2013, the trial court, without taking additional evidence, affirmed the Board's decision. MarkWest (No. 223 C.D. 2013) and Range Resources (No. 232 C.D. 2013) appealed to this Court. By August 14, 2013 order, this Court consolidated the appeals. On September 26, 2014, this Court reversed the trial court's order and remanded the matter to the trial court to remand to the Board with the direction to grant MarkWest's special exception application.[10] *See MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549 (Pa. Cmwlth. 2014) (*MarkWest I*). This Court further ruled:

> Should the Board determine . . . within the confines of the UDO's objective standards and criteria that any terms or conditions are needed to attach to the special exception application in order to ensure compliance with the UDO, it **shall specify the applicable UDO provision *and* explain why the term or condition is necessary**.

---

[9] On September 9, 2011, Marcellus Shale Coalition filed an amicus curiae brief with the trial court.

[10] On November 12, 2014, this Court denied the Board's request for reconsideration. *See* R.R. at 65a, 543a. On December 12, 2014, the Board petitioned for allowance of appeal to the Pennsylvania Supreme Court. *See* R.R. at 544a-564a. On April 9, 2015, the Supreme Court denied the Board's petition. *See* R.R. at 67a, 583a.

4

*Id.* at 573-74 (italic and bold emphasis added). This Court upheld the portion of the trial court's order affirming the Board's conclusions that the UDO did not unlawfully exclude natural gas compressor stations, and that the UDO is not preempted by state law. *See id.* at 573.

On June 26, 2015, the Board, on remand, granted MarkWest's special exception application, subject to the Conditions.[11] *See* MarkWest Br. App. B (Remand Decision) at 2-5; *see also* R.R. at 76a-81a, 707a-719a. On July 20, 2015, MarkWest appealed from the Board's decision to the trial court.[12] On October 5, 2016, the trial court affirmed the Board's decision, stating that the Conditions were reasonable and supported by the record. *See* MarkWest Br. App. A. Thereafter, MarkWest appealed to this Court.[13]

## Discussion

MarkWest argues that the Conditions exceed the Board's authority under the MPC and the UDO and, thus, violate this Court's September 26, 2014 order.

---

[11] The trial court remanded the matter to the Board on October 1, 2014. The Board held a May 18, 2015 meeting, at which it accepted public comment. The Board continued the proceeding to June 15, 2015, in order to consider conditions. Comments were also heard at the June 15, 2015 meeting. However, no new evidence was taken. Thus, the Board's decision on remand was based upon the 2011 Board hearing records. *See* MarkWest Br. at 9 n.1.

According to MarkWest, "[a]lthough the Board's decision was entered on June 26, 2015, it was not mailed to MarkWest. MarkWest received a copy of the [] Decision via e-mail from the Board's counsel on July 9, 2015." MarkWest Br. at 10; *see* R.R. at 90a.

[12] On July 27, 2015, Megan Warzinski, Doug Warzinski, Jessica Adamski, Melanie Dawson, Jessie J. White, Eileen White, Atticus White, Augustus White and Jeffrey White filed notices to intervene, which the trial court denied on May 9, 2016. Megan Warzinski, Doug Warzinski, Jessica Adamski and Melanie Dawson (collectively, Intervenors) appealed from the trial court's denial to this Court (*see* Pa. Cmwlth. No. 904 C.D. 2016). Intervenors' appeal was argued seriately herewith. On January 11, 2018, this Court affirmed the trial court's decision.

[13] "Where, as here, the trial court takes no additional evidence, our scope of review in a zoning appeal is limited to a determination of whether the [B]oard committed an abuse of discretion or an error of law." *Metro Bank v. Bd. of Comm'rs of Manheim Twp.*, 120 A.3d 426, 427 n.1 (Pa. Cmwlth. 2015).

5

MarkWest generally asserts that since this Court declared that it had "fully satisfied all of the applicable objective requirements of the UDO[,] . . . no conditions are necessary to ensure compliance with the MPC or the UDO." MarkWest Br. at 11. In the alternative, MarkWest avers that the Conditions are unreasonable, unsupported by the record and contrary to law. MarkWest more specifically contends that, with the exception of the first sentence of Condition 2, the Board's Conditions exceed the Board's authority under the MPC because they regulate the *how* of MarkWest's proposed use, rather than the *where*; MarkWest's proposed use has been legislatively determined not to materially affect the public interest; and, the Conditions are unduly restrictive and result in arbitrary and unreasonable discriminatory and unequal treatment of MarkWest's proposed use as compared to other such uses in the Township. *See* MarkWest Br. at 15-49; *see also* MarkWest Reply Br. at 3-15.

The law is clear that "[the Board's] authority is defined by the MPC and the [UDO]." *HHI Trucking & Supply, Inc. v. Borough Council of Borough of Oakmont*, 990 A.2d 152, 160-61 (Pa. Cmwlth. 2010); *see also* Section 303.D of the UDO (R.R. at 166a). Section 912.1 of the MPC[14] states, in pertinent part: "In granting a special exception, the [B]oard may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of [the MPC] and the zoning ordinance." 53 P.S. § 10912.1. Section 404.B.1.1[15] of the UDO specifically provides that "the Board may attach reasonable conditions and safeguards necessary to protect the public health, safety, and welfare." R.R. at 185a. Accordingly, this Court's September 26, 2014 order expressly authorized the Board to impose reasonable conditions necessary to ensure MarkWest's compliance with the UDO. *See* R.R. at 62a-63a.

---

[14] Added by Section 91 of the Act of December 21, 1988, P.L. 1329.

[15] The UDO is incorrectly numbered and, thus, has two UDO Section 404.B.1 provisions. *See* R.R. at 184a-185a. This reference is to the second provision.

6

This Court has expressly held that "[a] board is permitted to impose conditions on the use of a property to mitigate any potential adverse impacts from the proposed use, and is required to reduce the negative impacts to an acceptable level if it can, by imposing conditions." *In re Appeal of Maibach, LLC*, 26 A.3d 1213, 1216 (Pa. Cmwlth. 2011).

> However, the ability to impose a condition on a special exception is not unfettered. **Conditions must be reasonable and must [have] support in the record** warranting the imposition of such conditions; otherwise, the imposition of conditions constitutes an abuse of discretion.[16] *Sabatine v. Zoning Hearing B[d.] of Washington T[wp.],* 651 A.2d 649, 655 (Pa. Cmwlth. 1994). '[T]he Board is not required to support the imposition of conditions; rather, the opposite is true - **property owners are required to show that the imposition of conditions was an abuse of discretion**.' *Leckey v. Lower Southampton T[wp.] Zoning Hearing B[d.],* 864 A.2d 593, 596 (Pa. Cmwlth. 2004).[FN]10
>
>> [FN]10 In *Leckey,* this Court described the standard of review of conditions attached to the grant of a special exception as follows:
>>
>>> . . . **a court reviews** a challenge to the reasonableness of those conditions; it does not determine whether there is substantial evidence, which is a 'fact standard,' but

---

16  Although the 'abuse of discretion' scope of review is not expressly provided for in the Administrative Agency Law[, 2 Pa.C.S. §§ 501-508, 701-704,] or the Local Agency Law[, 2 Pa.C.S. §§ 551-555, 751-754], it is included in the requirement that the agency decision be 'in accordance with law.' To be 'in accordance with law,' an agency's decision must not represent a manifest and flagrant abuse of discretion or a purely arbitrary execution of its duties or functions as set forth in the case law prior to the enactment of the Administrative Agency Law.

*Leckey v. Lower Southampton Twp. Zoning Hearing Bd.*, 864 A.2d 593, 596 n.4 (Pa. Cmwlth. 2004).

7

> **whether those conditions constitute an abuse of discretion**.

> *Id.* at 596. As explained in several other cases, **the imposition of a condition when there is no evidence in the record to support the condition is manifestly unreasonable and an abuse of discretion**. *See Berger v. Zoning Hearing B*[*d.*] *of the Borough of Mifflinburg, . . .* 482 A.2d 1184 ([Pa. Cmwlth.] 1984); *Abernathy v. Zoning Hearing B*[*d.*] *of Hampton T*[*wp.*]*, . . .* 546 A.2d 1311 ([Pa. Cmwlth.] 1988); *Sabatine, supra.*

*Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd.*, 944 A.2d 832, 839 (Pa. Cmwlth. 2008) (emphasis added). Accordingly,

> *Leckey* does not authorize a zoning hearing board to 'devise conditions out of thin air and without any reference to the record evidence.' [*HHI*, 990 A.2d] at 160. Rather, **a reasonable condition must** (1) **relate to a standard in the applicable zoning ordinance or in the** [**MPC**] *and* (2) **be supported by evidence** in the record before the zoning hearing board. *Id.* at 160-[]61. If the condition does not satisfy these requirements, then the landowner proves an abuse of discretion.

*Whitehall Fiduciary, LLC v. Zoning Hearing Bd. of Twp. of Whitehall*, 49 A.3d 945, 948 (Pa. Cmwlth. 2012) (italic, bold and underline emphasis added).

As a preliminary matter, we observe that the Township's governing body enacted Section 2 of Township Ordinance No. 2-2010 expressly permitting the Proposed Facility to be located in the Township's I-1 Light Industrial District by special exception, as long as the UDO's objective criteria are met.[17] In considering

---

[17] According to UDO Section 102, the Township is a Second Class Township governed by the MPC, and The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701, which prescribes that the Township's governance will be by a board of supervisors. *See* Section 607 of The Second Class Township Code, added by Section 1 of the Act of November 9, 1995, P.L. 350, *as amended*, 53 P.S. § 65607. Accordingly, "Township (F[or] Approval Process)" is defined in Section 202 of the UDO as "the [Township] Board of Supervisors, or any individual or commission or agent or agency so designated by the [Township] Board of

MarkWest's application, the Board was specifically mandated by Section 404.B.1 of the UDO to consider the Township's land use plan and objectives, whether the proposed use complied with UDO Part 16 (relating to environmental performance standards), the impact on the environment and adjacent properties, and whether the proposed use would be equivalent to those permitted in the Township by right. *See* R.R. at 184a. Section 103 of the UDO specifies that the Township's community development objectives are intended, *inter alia*, to: "[p]rotect and promote the public health, safety, and general welfare" (R.R. at 129a); "[p]rovide for performance standards for the emission of noise, gases, heat, vibration, or particulate matter into the air or ground or across lot lines" (R.R. at 130a); "[p]revent the pollution of air and watercourses[,] . . . safeguard the water table[,] and encourage the wise use and management of natural resources in order to preserve the community and value of the land" (R.R. at 130a); and, "[p]reserve the natural beauty and topography of the Township and ensure appropriate development with regard to these natural features" (R.R. at 130a). (Sections 103, 404.B.1 and Part 16 of the UDO will collectively be referred to hereinafter as the Public Welfare Provisions.)

This Court declared in *MarkWest I* that "MarkWest['s] . . . evidence, and the Board's findings . . . support the conclusion that every factor the UDO requires the Board to consider . . . has been satisfied." *Id.* at 570. Accordingly, MarkWest's application, as submitted, satisfied all of the UDO's prerequisites for special exception approval. Moreover, the law is well settled that "[**a**] **special exception is** neither special nor an exception, but **a use expressly contemplated that evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety and welfare of the**

---

Supervisors." R.R. at 159a. Thus, unless otherwise specified, the Township's affairs are conducted by its Board of Supervisors.

9

community."[18]  *Allegheny Tower Assocs., LLC v. City of Scranton Zoning Hearing Bd.*, 152 A.3d 1118, 1123 (Pa. Cmwlth. 2017) (emphasis added).  "[I]t is not the role of the [zoning hearing board] in adjudicating a [special exception] application, let alone for the courts, to second guess the legislative decision underlying the ordinance."  *EQT Prod. Co. v. Borough of Jefferson Hills*, 162 A.3d 554, 563 (Pa. Cmwlth. 2017).  Thus, if the ordinance's objective special exception criteria are met, it is **presumed** "that the use is consistent with the health, safety and general welfare of the community."  *Greaton Props. v. Lower Merion Twp.*, 796 A.2d 1038, 1045-46 (Pa. Cmwlth. 2002); *see also MarkWest I*.

**To overcome the presumption, objectors' evidence must "show, to a *high probability*, that the proposed use would generate adverse impacts *not normally generated by this type of use (i.e., natural gas compressor stations)*, and that those impacts would pose a *substantial threat* to the health and safety of the community**."  *Allegheny Tower Assocs.*, 152 A.3d at 1125 (italic and bold emphasis added); *see also EQT Prod. Co.*, 162 A.3d at 561 ("This is so because the governing body in enacting the ordinance presumptively took into account the impact of the use and considered it not to be a threat to health, safety or welfare."); *Stein v. Easttown Twp. Bd. of Supervisors*, 532 A.2d 906, 910 (Pa. Cmwlth. 1987) ("The objector must show that any adverse impact as a result of the proposed use is *abnormal*, and that there is a *high probability of occurrence*.")  (Emphasis added.)  "The burden that is placed upon the objectors requires more than mere speculation of possible harm."  *In re Thompson*, 896 A.2d 659, 679 (Pa. Cmwlth. 2006); *see also Commonwealth of Pa., Bureau of Corr. v. City of Pittsburgh, Pittsburgh City Council*, 532 A.2d 12 (Pa.

---

[18] Section 103 of the UDO states: "The zoning regulations and districts set forth in this [UDO] are created in accordance with the Land Use Plan Goals and Objectives contained in the Comprehensive Plan of the Township" which include, *inter alia*, "[p]rotect[ion] and promot[ion of] the public health, safety and general welfare," R.R. at 129a, and environmental protection and conservation.  *See* R.R. at 130a.

1987) (objectors' fears, perceptions and personal opinions without concrete record support are insufficient to meet their burden); *Kretschmann Farm, LLC v. Twp. of Sewickley*, 131 A.3d 1044, 1054 (Pa. Cmwlth. 2016) ("[E]xpressions of concern do not constitute probative evidence of harm."); *Stein* (a claim that a use might injure the public interest if it is improperly maintained is insufficient). Additionally, this Court has declared that it is an abuse of discretion and manifestly unreasonable for a zoning board to impose a special exception condition "merely [] to appease neighboring residents." *Coal Gas Recovery, L.P.*, 944 A.2d at 840.

**In *MarkWest I*, this Court concluded that "[t]he Board did not make any finding or reach a conclusion that the objectors demonstrated to 'a high degree of probability that** [the Proposed Facility] **will substantially affect the health and safety of the community**.'"[19] *Id.* at 570 (emphasis added) (quoting *Rural Area Concerned Citizens, Inc. v. Fayette Cty. Zoning Hearing Bd.*, 646 A.2d 717, 722 (Pa. Cmwlth. 1994)). Thus, the Township "has already considered that [the Proposed Facility] satisfies local concerns for the general health, safety, and welfare and that such use comports with the intent of the [UDO]," without the Conditions. *In re Brickstone Realty Corp.*, 789 A.2d 333, 340 (Pa. Cmwlth. 2001).

Further, the Pennsylvania Supreme Court has made clear that "the authority of a zoning board to act arises exclusively from the ordinance and the enabling statute and the language of both demarcates [its] jurisdiction . . . ." *Norate Corp. v. Zoning Bd. of Adjustment of Upper Moreland Twp.*, 207 A.2d 890, 893-94 (Pa. 1965).

> [A] **zoning board** is not a legislative body, and it **lacks authority to modify or amend the terms of a zoning**

---

[19] The Proposed Facility is permitted by special exception in the Township's I-1 Light Industrial District. The objectors' general concerns in *MarkWest I* were directed more toward the Township/UDO's authorization of a natural gas compressor station in the Township, rather than MarkWest's specific ability to safely operate the Proposed Facility.

11

**ordinance**. '[Z]oning boards . . . must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law.' Thus, the **Board is required to apply the terms of the Zoning Ordinance as written** rather than deviating from those terms based on an unexpressed policy.

*Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007) (citation omitted; emphasis added) (quoting *Ludwig v. Zoning Hearing Bd. of Earl Twp.,* 658 A.2d 836, 838 (Pa. Cmwlth. 1995)); *see also MarkWest I.* "**A zoning hearing board does not enjoy broad, inchoate powers to advance its members' vision of what constitutes the public welfare** or even the public welfare as defined in a variety of environmental protection statutes, be they state or federal. Other governmental agencies bear that enforcement authority." *HHI*, 990 A.2d at 160 (emphasis added). "For example, . . . Borough Council attempted to require HHI to perform air quality tests although HHI had met the County's applicable air quality standards to the satisfaction of the County Health Department." *Id.* at n.8. Ultimately, "the conditions can[]not be so onerous as to bar the use, and **broad policy statements may not form the basis for such conditions**." *Good v. Zoning Hearing Bd. of Heidelberg Twp.*, 967 A.2d 421, 430 (Pa. Cmwlth. 2009) (emphasis added).

In addition, although Section 601 of the MPC, 53 P.S. § 10601, expressly authorizes municipalities to enact zoning ordinances designating what *land uses* are permitted in what districts for purposes of planned community development (*i.e.*, the *where*), **the MPC does not authorize those municipalities to dictate specific *business operations*** (*i.e.*, the *how*) under the guise of zoning regulation. *See Thompson*, 896 A.2d at 670 ("Special exception . . . proceedings involve only the proposed use of the land, and do not involve the particular details of the design of the proposed development."); *see also Van Sciver v. Zoning Bd. of Adjustment of Phila.*,

152 A.2d 717, 724 (Pa. 1959) (Variance conditions, *inter alia*, limiting a self-serve laundromat's unmanned nature and operating hours in the interest of crime prevention nevertheless constituted unreasonable "intermeddling with the applicant's ownership of his property."); *Appeal of Sawdey*, 85 A.2d 28, 32 (Pa. 1951) (An ordinance (or condition) that "permitted a butcher shop . . . in an area but prohibited its sale of pork, or a drugstore but prohibited its sale of candy, or a grocery store but prohibited its sale of bread, would surely be regarded a[s] unreasonable legislation on details of a business . . . ."); *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 123 A.3d 1142, 1149 (Pa. Cmwlth. 2015) ("A [special exception] involves the use of the land, as opposed to the particular design details of the development."); *Land Acquisition, Servs., Inc. v. Clarion Cty. Bd. of Comm'rs*, 605 A.2d 465 (Pa. Cmwlth. 1992) (Where an ordinance's primary objective is to regulate and control the operational aspects of a business, the ordinance is not a zoning ordinance.); *Schatz v. New Britain Twp. Zoning Hearing Bd. of Adjustment*, 596 A.2d 294, 298 (Pa. Cmwlth. 1991) ("Zoning only regulates the *use* of land and not the particulars of development and construction."); *Kulak v. Zoning Hearing Bd. of Bristol Twp.*, 563 A.2d 978, 980 (Pa. Cmwlth. 1989) ("[A] board may not attach a condition to a special exception which essentially serves a non-zoning purpose[.]").

> The power to regulate the use of property does not extend to an arbitrary, unnecessary or unreasonable intermeddling with private ownership of property even though such acts may be labeled for the preservation of health, safety and general welfare. The exercise must have some substantial relation to the public good within the spheres held proper. It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely esthetic considerations.

*Appeal of Mignotti Constr. Co., Inc.*, 281 A.2d 355, 360-61 (Pa. Cmwlth. 1971). Otherwise, the zoning hearing board decisions could lead to inconsistent results. *See*

13

*HHI.* More importantly, however, this Court has declared that in "depart[ing] from its function of determining whether the proposed use fell within the terms of the [z]oning [o]rdinance and focus[ing] instead on implementing goals that it believed fell within the spirit of the legislative enactment[,]" a zoning board improperly takes on the role of "the [municipality's] governing body . . . that has the power to enact laws to regulate land use pursuant to the police power." *Greth Dev. Grp.*, 918 A.2d at 189. Where, as here, "the Township Supervisors, who, having conceived the policy behind the [UDO], have presumably translated that policy into concrete [special exception] requirements[ that MarkWest has met, w]e cannot permit the Board to legislate additional conditions upon [MarkWest]." *Appeal of Baker*, 339 A.2d 131, 135 (Pa. Cmwlth. 1975).

Based on the foregoing, regardless of the Board's best intentions, those Conditions not borne from the UDO/MPC and the record are unreasonable and, therefore, are an abuse of the Board's discretion. With this legal underpinning, the Court will proceed to review the Board's Conditions.

## Board Conditions

Initially, we address the Board's declaration that, "[w]ith slight modifications, [C]onditions 1 through 24 were authored by MarkWest representatives, and therefore, . . . should be considered reasonable." Board Remand Dec. at 2 n.1. We acknowledge that, in 2011, the Board proposed conditions to which MarkWest responded and, in some instances, MarkWest offered proposed modifications. However, in its response, MarkWest expressly stated:

> Offering to consent to a condition is a business, not a legal, decision on MarkWest's part. **In the event the special exception application is denied**, in the event any condition is imposed which materially differs from those to which MarkWest is offering to consent or in the event of an appeal

by others, **MarkWest reserves the right to reject not only that specific condition, but all conditions**. In addition, MarkWest reserves the right to contest the Township's authority . . . to regulate or impose conditions, requirements or limitations on the proposed facilities, their location and their operations. Finally, MarkWest reserves the right to challenge any condition to the extent that it is imposed upon MarkWest in a discriminatory manner and constitutes unequal treatment under the law, and to raise any issue that was raised or referred to in the public hearings held in relation to MarkWest's proposed operation.

R.R. at 494a (emphasis added); *see also* MarkWest Reply Br. at 15.

Clearly, MarkWest's 2011 response to the Board's then-proposed conditions were offered in an effort to amicably resolve the parties' differences in obtaining the Board's approval of its special exception application without further litigation, and MarkWest never agreed to be bound by them. Moreover, a condition's reasonableness is determined by whether it has some basis in the UDO/MPC and the record, not by whether the landowner has consented to it, or whether, as the Board proffers here, it "has potential benefits to MarkWest." Board Br. at 18; *see also Whitehall Fiduciary, LLC*. Under the circumstances, the Board's position that MarkWest has agreed to Conditions 1 through 24 is disingenuous, as the Board relies on limited aspects of MarkWest's response and disregards MarkWest's unequivocal disclaimer.

In further defense of the Conditions, the Board cited this Court's *PPM Atlantic Renewable v. Fayette County Zoning Hearing Board* (Pa. Cmwlth. No. 1431 C.D. 2010, filed March 11, 2015) decision for its authority to "impos[e] [] conditions to mitigate otherwise harmful uses." Board Br. at 20. Although *PPM* is unreported and, thus, non-precedential, the *PPM* Court relied on *Feldman v. Board of Supervisors of East Caln Township,* 48 A.3d 543 (Pa. Cmwlth. 2012), wherein this Court, in fact, held: "A board is permitted to impose reasonable conditions on the use of a property to mitigate any potential adverse impacts from the proposed use." *Id.* at

15

548. Notwithstanding, the law is clear that conditions must be based on the UDO/MPC and the record to be reasonable. *Whitehall Fiduciary, LLC*. Otherwise, a zoning board could impose an endless number of conditions in order "to mitigate *any potential* adverse impacts." *Feldman*, 48 A.3d at 548 (emphasis added).

Bearing in mind that the Proposed Facility satisfies the UDO's requirements and, as defined by well-established precedent, will not be generally detrimental to the health, safety and welfare of the Township's citizens, *MarkWest I*, this Court will examine each of the Board's 26 Conditions to determine whether the Board specified why each is necessary (as this Court's September 26, 2014 order mandated),[20] and whether they are reasonable.[21]

## Condition 1

> MarkWest, at its cost, shall retain an independent third[-]party consultant to test the water in wells and springs located within 1500 feet of the [Proposed Facility] pad fence before commencement of construction. Selection of the independent third[-]party consultant shall be subject to approval by the Township, said approval not to be unreasonably withheld. The testing shall be performed in accordance with a groundwater sampling plan which MarkWest shall submit to the Township prior to performing any sampling (**[UDO] Section 1608**).

Board Remand Dec. at 2. Section 1608 of the UDO prohibits discharge of any materials that could contaminate the sewer system, streams or the ground, or cause hazardous materials to be emitted, except in accordance with DEP standards.[22] *See* Board Remand Dec. at 7; *see also* R.R. at 401a.

---

[20] "The word 'necessary,' is said to be a synonym of 'needful.' But both [of] these words are defined 'indispensably requisite[.]'" *M'Culloch v. State of Maryland*, 17 U.S. 316, 367 (1819).

[21] The Conditions are discussed herein in the manner that MarkWest addressed them in its brief and, thus, are not discussed in numbered order.

[22] Notably, in Section 912.D.3 of the UDO, the Township supplied numerous provisions "to augment and supplement state and federal regulations and guidelines[] concerning the storage,

16

Rather than explain the necessity for Condition 1 in its Remand Decision as required by this Court's September 26, 2014 order,[23] the Board merely summarized:

> MarkWest testified that it would comply with the requirements of Chapter 16, implement soil controls and provide secondary containment, removal of condensate to Ohio and comply with all environmental standards (Opinion of Cmwlth. Ct. at 19). Pursuant to Section 1608 of the UDO, the Board may require compliance with this [C]ondition in order to protect the health, safety and welfare of its citizens.

Board Remand Dec. at 7.

> MarkWest responds that

> Condition 1 is utterly silent with respect to the substance of the required sampling or the methods to be employed. While Condition 1 requires a groundwater sampling plan to be submitted to the Township prior to sampling wells and springs, it fails to indicate what must be included in the sampling plan, or whether the Township must approve the plan and, if so, by what measure(s). And [Condition 1], on its face, requires MarkWest, at its cost and expense, to conduct a field survey to locate all wells and springs within 1500 feet of the compressor station pad fence. Condition 1, moreover . . . fails to explain why the sampling is being conducted and what MarkWest is to do with the results.

treatment, and disposal of hazardous waste" for uses permitted by special exception in the Township's I-2 Heavy Industrial District. R.R. at 295a. The UDO does not impose similar restrictions and guidelines on uses permitted by special exception in the Township's I-1 Light Industrial District.

[23] The Board attempted to explain the necessity for this Condition (*i.e.*, "to establish a baseline for the water quality of nearby wells and springs," because MarkWest's promise is insufficient – Board Br. at 19), and several of the other Conditions, in its brief on appeal to this Court, which explanation was not set forth in its Remand Decision. However, "[b]ecause statements in briefs do not constitute evidence of record . . . , we will not consider them." *Sch. Dist. of Pittsburgh v. Provident Charter Sch. for Children With Dyslexia*, 134 A.3d 128, 143 n.27 (Pa. Cmwlth. 2016). The time for the Board to have provided its explanation for imposition of each Condition was in the Remand Decision, as this Court directed, so MarkWest could have properly responded.

17

What is MarkWest sampling for? What sampling method(s) is MarkWest to utilize? What is MarkWest to do with the sampling once completed? Is MarkWest to supply those sampling results to the Township? If so, when and for what purposes? What is the Township going to do with the sampling data?

MarkWest Br. at 37-38. Further, MarkWest specifically asserts that since the operative terms "contaminate" and "hazardous materials" are not defined, Section 1608 of the UDO, Condition 1 lacks enforceable standards. MarkWest Br. at 39.

"This [C]ourt has recognized that a violation of a condition attached to a special exception is the equivalent of a violation of the zoning ordinance." *Kulak*, 563 A.2d at 980; *see also* UDO Section 1903 (R.R. at 433a) (The Township may impose penalties for violating special exception conditions.). Under UDO Part 19 (Enforcement), the Township has the means to take action if MarkWest fails to comply with the UDO or the Board's Conditions. Section 614 of the MPC specifically authorizes zoning officers to institute civil enforcement proceedings for UDO violations but, in doing so, "[t]he zoning officer shall administer the zoning ordinance **in accordance with its literal terms**[.] 53 P.S. § 10614 (emphasis added); *see also* Section 305.B.8 of the UDO, R.R. at 168a. Here, the Township's zoning officer would be hard-pressed to enforce the vagaries of Condition 1 against MarkWest.

Moreover, because there is no record evidence that MarkWest's operations will cause water contamination, and since Section 1608 of the UDO does not contain a specific and enforceable testing/sampling requirement pursuant to a Board-reviewed plan and conducted by a third party, Condition 1 is not based on the UDO/MPC and the record evidence. Accordingly, Condition 1 is unreasonable and the Board abused its discretion by imposing it.

## Condition 2

Once operational, normal operations and activities at the facility shall not exceed sixty (60) [decibels (dbA)] for more than two (2) hours at the property line. MarkWest, at its cost, shall hire a noise consultant approved by the Township, such approval not to be unreasonably withheld, to measure the noise level at the lease line during a start-up period and at a period while under operation, including measurements made during a blow down. The results of this testing will be provided to the Township. Thereafter, it shall be tested every five years. MarkWest and the Township shall agree to a testing protocol to be implemented in the event of the receipt of noise complaints. The Township reserves the right to conduct its own testing at any time (**[UDO] Section 1602.A**).

Board Remand Dec. at 2. Section 1602.A of the UDO provides that "[e]xcessive noise shall be required to be muffled so as not to be objectionable to surrounding property owners due to intermittence, beat frequency, shrillness, or volume."[24] R.R. at 400a; *see also* Board Remand Dec. at 6. With respect to Condition 2, the Board explained in its Remand Decision:

MarkWest testified to a noise level of no greater than 60 dbA at the property line at its hearing ([Findings of Fact (FOF)] 14, 77, 78 & Opinion of Cmwlth. Ct. at 25). . . . Pursuant to Section 1602.A of the UDO, the Board may require compliance with this [C]ondition in order to protect the health, safety and welfare of its citizens.

Board Remand Dec. at 6.

MarkWest has declared that it "is . . . amenable to the self-imposed condition reflected by the *first sentence* of Condition 2." MarkWest Br. at 42 (emphasis added). However, MarkWest argues that the Board abused its discretion

---

[24] A draft ordinance proposing to amend UDO Sections 202 (Definitions) and 1602 (Noise) was included in the Reproduced Record. However, it is unnumbered and unsigned and, thus, was not effective at the time MarkWest filed its application or the Board imposed the Conditions. *See* R.R. at 454a-457a.

by imposing the remainder of Condition 2 because: UDO Section 1602.A does not expressly authorize its imposition; UDO Section 1602.A lacks enforceable standards; the need for extensive noise testing is not supported by the record; the Board lacks authority to impose operational conditions; the proposed use has been legislatively determined not to materially affect the public interest; and Condition 2 is unduly restrictive and results in arbitrary and unreasonable discriminatory and unequal treatment. *See* MarkWest Br. at 42-43; *see also* MarkWest Reply Br. at 9-11.

It is clear that Section 1602.A of the UDO does not expressly prohibit noises over 60 dbA, nor mandates noise testing protocol or testing by the Township or a consultant.[25] Further, in *HHI*, this Court struck down a similar condition because the ordinance did not define the term "objectionable," and failed to specify the standard by which sound levels would be measured. The *HHI* Court held: "In the absence of such specificity, [the] required [noise] study is impossible of execution and, as such, unreasonable." *HHI*, 990 A.2d at 163.

In addition, the Board's record references in support of Condition 2 do not reflect why a limitation was necessary, but rather summarize MarkWest's commitment to maintain noise levels at its property line at a level that neighbors of other compressor stations have found acceptable. In *MarkWest I*, this Court held that "the Board's findings . . . support the conclusion that every factor the UDO requires the Board to consider[, including Section 1602.A of the UDO, *id.* at 562,] . . . has been satisfied." *Id.* at 570. Because there is no record evidence that MarkWest's

---

[25] Although Section 16 of Ordinance 2-2010 requires operators of oil and gas development facilities to measure, monitor, test and report noise levels to the Township, *see* R.R. at 465a, there is no similar requirement for natural gas compressor station operators. Section 2 of Ordinance 2-2010 defines "Oil and Gas Development or Development" to include "activities associated with the exploration for, production and transportation of Oil and Gas **other than Natural Gas Compressor Stations, . . . or facilities . . . that operate as midstream facilities**." R.R. at 460a-461a (emphasis added).

operations will cause excessive and/or objectionable noise, and since Section 1602.A of the UDO does not contain a specific and enforceable testing requirement in compliance with a Board-reviewed protocol and conducted by a noise consultant, the requirements beyond the first sentence of Condition 2 are unreasonable and the Board abused its discretion by imposing them. Accordingly, Condition 2 is hereby amended to state: "Once operational, normal operations and activities at the [Proposed F]acility shall not exceed sixty (60) [decibels (dbA)] for more than two (2) hours at the [P]roperty line." Board Remand Dec. at 2.

## Condition 6

> MarkWest must install video surveillance monitoring equipment at the site for security purposes (**[Public Welfare Provisions]**).

Board Remand Dec. at 3. The UDO's Public Welfare Provisions require the Board to consider the Township's land use plan/objectives (UDO Section 404.B.1), Environmental Performance Standards/impact (UDO Part 16), and public health, safety and welfare protection and natural resource preservation (UDO Section 103), when deciding whether to grant a special exception application. In support of Condition 6 in its Remand Decision, the Board stated:

- (Section 103) Section 103 states that it is the Community Development Objective of the Township to protect and promote the public health, safety and general welfare. Pursuant to Section 103 of the UDO, the Board may require compliance with this condition in order to protect the health, safety and welfare of its citizens.

- (Section 404.B.1) Section 404.B.1 grants the Board with the power to place reasonable conditions necessary to protect the health, safety and welfare on the approval of a special exception application. Pursuant to Section 404.0.1 of the UDO, the Board may require compliance with this

21

condition in order to protect the health, safety and welfare of its citizens.

. . . .

- (Part 16) MarkWest expressly committed to 'absolutely' comply with the UDO Part 16 requirements (Opinion of Cmwlth. Ct. at 19). Part 16 contains Environmental Performance Standards, is concerned with the impact of property use and seeks to ensure that property is used in a manner that does not unreasonably interfere with other persons' use of their property. Pursuant to Part 16 of the UDO, the Board may require compliance with this condition in order to protect the health, safety and welfare of its citizens.

Board Remand Dec. at 5-6. Essentially, the Board summarized the UDO and MarkWest's commitment, but failed to specify why Condition 6 is necessary.[26]

MarkWest contends that "[n]one of the [Public Welfare P]rovisions supply the Board with authority to impose this [C]ondition on MarkWest's special exception approval," rather, they "are statements designed to provide guidance for interpretation of the substantive provisions elsewhere in the UDO." MarkWest Br. at 44; *see also* MarkWest Reply Br. at 11-13. MarkWest pronounces that Section 103 of the UDO is expressly limited, such that it "shall be considered, together with the provisions of this Chapter, when appraising the 'spirit of the ordinance' as a guide to its interpretation. Nothing herein shall be interpreted as providing limitations on specific controls delineated in subsequent sections of this Chapter.[]" MarkWest Br. at 44; *see also* R.R. at 130a.

---

[26] The late-proffered necessity the Board supplied in its brief for Condition 6 that since the Proposed Facility is unmanned, "citizens raised concerns at the initial hearings, including but not limited to the fear of terrorism, fires, and leaks," has no UDO or record-based merit. Board Br. at 22. Further, the *MarkWest I* Court concluded that "[t]he Board did not make any finding or reach a conclusion that the objectors demonstrated to 'a high degree of probability that [the Proposed Facility] will substantially affect the health and safety of the community.'" *Id.* at 570 (quoting *Rural Area Concerned Citizens, Inc.*, 646 A.2d at 722). Moreover, "[s]peculation of possible harms is not sufficient to satisfy [the objectors'] burden." *HHI*, 990 A.2d at 159.

MarkWest further argues:

Section 404.B.1 of the UDO is the general provision authorizing the Board to attach reasonable conditions to a special exception approval. R.[R. at] 185a. This authority can be no broader tha[n] what is permitted by Section 912.1 of the MPC, 53 P.S. § 10912.1. As explained above, Section 912.1 of the MPC is not a license for the Board to legislate. The Board's conditions must relate to a standard adopted in the UDO and it cannot devise conditions out of thin air and without any reference to the record evidence. *See HHI*, 990 A.2d at 160. Here, there is no standard adopted in the UDO related to security - at MarkWest's [P]roposed [F]acility or any other facility - and nothing in the record evidence supports the imposition of [a] condition requiring video surveillance at the facility.

MarkWest Br. at 44-45.

The UDO does not mandate video surveillance monitoring equipment or any other specific security measures at the Proposed Facility or anywhere else in the Township. Moreover, there is no record evidence that the Proposed Facility presents any more of a risk of trespassers than any other use permitted in the Township's I-1 Light Industrial District. Since the record does not support a need for this Condition, we agree that by citing to the Public Welfare Provisions' general policy statements in support of this Condition, the Board is improperly assuming the legislative role reserved for the Township's governing body.[27] Because Condition 6

---

[27] It is in the nature of a special exception to require that the applicant meet reasonably definite conditions, and it would be manifestly unfair to require him to prove conformity with a policy statement, the precise meaning of which is supposed to be reflected in [the special exception's s]pecific requirements . . . . Any other view would enable the Board to assume the legislative role of the Township Supervisors, who, having conceived the policy behind the ordinance, have presumably translated that policy into concrete requirements.

*Appeal of Baker*, 339 A.2d at 135.

23

is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

## Condition 20

> Normal blow down[28] from compressors shall be recycled back into the gas stream ([**Public Welfare Provisions**]).

Board Remand Dec. at 4. Despite this Court's order to specify the UDO and record-based necessity for Condition 20, the Board merely recites its authority to impose conditions and incorporates the general "public health, safety and welfare" words.

MarkWest contends that "[t]here is . . . nothing in [the Public Welfare Provisions], whether considered individually or collectively, that can be reasonably construed as providing the Board with authority to impose this clearly *operational* condition, which addresses air emissions, on MarkWest's [P]roposed [F]acility." MarkWest Br. at 46. MarkWest further argues that Condition 20 is preempted by the Air Pollution Control Act (APCA),[29] which grants DEP the exclusive authority to

---

[28] During the 2011 hearings, MarkWest described three types of blow downs: (1) "on the launch receivers for launching pigs" daily; (2) to equalize or load a compressor before starting it up; and, (3) when shutting the site down. *MarkWest I* R.R. at 401a; *see also MarkWest I* R.R. at 401a.

[29] Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. §§ 4001-4015. Section 4 of the APCA, 35 P.S. § 4004, expressly authorizes DEP to implement federal clean air laws, and to monitor, test, investigate and ensure compliance and abatement by air contamination sources in the Commonwealth. This Court has held:

> The Commonwealth is committed to the conservation and maintenance of clean air by Art[icle] I, [Section] 27 of the Pennsylvania Constitution. To that effect, through Section []2 of the [APCA], the legislature has declared as policy the protection of air resources to the degree necessary for the protection of the health, safety and well-being of the citizens; the prevention of injury to plant and animal life and property; the protection of public comfort and convenience and Commonwealth recreational resources; and the development, attraction and expansion of industry, commerce, and agriculture. In sum, protection of air resources is a matter of highest priority in the Commonwealth.

establish and implement air pollution control programs. *See* MarkWest Br. at 46; *see also* MarkWest Reply Br. at 13. Moreover, neither the UDO or the MPC authorize the Board to prescribe precisely how MarkWest will comply with emission standards. *See Thompson.* Under the circumstances, because Board Condition 20 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

## Condition 25

> MarkWest is limited to the installation of no more than five (5) electric or eight (8) gas compressor engines at the [Proposed Facility]. MarkWest shall install all electric compressor engines; however, in the event that the availability of electricity renders the compressor facility inoperable, then MarkWest may present evidence of the unavailability of electricity to the [Board that] shall then determine whether gas compressor engines shall be permitted ([**UDO**] **Section**[**s**] **1602 and 1603**).

Board Remand Dec. at 5. As stated above, Section 1602 of the UDO restricts excessive noise. Section 1603 of the UDO provides: "No operation or activity shall, at any time, cause ground-transmitted vibrations that are detrimental to the public health, safety, comfort, or welfare."[30] R.R. at 401a. Despite this Court's order to do so, the Board did not specify why Condition 25 was necessary. Further, the Board did not include UDO Section 1603 in its Remand Decision's list of general "support for the . . . [C]onditions and associated Sections of the UDO." Board Remand Dec. at 5.

---

*Dep't of Envtl. Res. v. Locust Point Quarries, Inc.*, 396 A.2d 1205, 1209 (Pa. 1979) (footnote omitted).

Since we hold that Condition 20 is unreasonable on other grounds, we need not address MarkWest's preemption issue herein.

[30] "Vibration resulting from temporary construction activity that occurs between 7:00 a.m. and 6:00 p.m. shall be exempt from the requirements of [UDO] Section [1603]." R.R. at 401a.

MarkWest argues that the Board abused its discretion by imposing Condition 25 because UDO Sections 1602 and 1603 do not expressly authorize its imposition, and they lack enforceable standards, particularly since the terms "acceptable" and "objectionable" are not defined. *See* MarkWest Br. at 42-43; *see also* MarkWest Reply Br. at 3-5.

Sections 1602 and 1603 of the UDO do not expressly limit the number of compressors and/or make a distinction between gas and electric compressors that may be used at the Proposed Facility. In fact, Section 2 of Township Ordinance No. 2-2010 defines "Natural Gas Compressor Station" to include "**one or more natural gas compressors**, associated buildings, pipes, valves, tanks and other equipment." R.R. at 461a (emphasis added).

In addition, there is no record basis for Condition 25. During the 2011 proceedings, MarkWest represented that the compressors at the Proposed Facility would be "[e]lectric or gas," *MarkWest I* R.R. at 343a; *see also MarkWest I* R.R. at 342a, but clarified that "there will almost certainly be natural gas compressors no matter what. It's not going to be all electric even if there was electric." *MarkWest I* R.R. at 950a; *see also MarkWest I* R.R. at 342a-343a, 940a-941a, 950a. MarkWest acknowledged that noise emanates from gas compressor engines, but did not state whether electric compressor engines create noise, or to what level. *See MarkWest I* R.R. at 399a. Finally, there is no record evidence that gas compressors will create more vibrations than electric compressors.

Because Condition 25 is not based on the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.


**Condition 26**

> MarkWest is required, at [its] expense, to hire an independent third-party agency to perform a baseline air

quality test at the center of the site with annual air quality tests each year thereafter (**[UDO] Section[s] 1604 and 1605)**.

Board Remand Dec. at 5.  Section 1604 of the UDO prohibits "[t]he emission of smoke or particulate matter in such manner or quantity as to endanger or to be detrimental to the public health, safety, comfort, or welfare[.]"  R.R. at 401a.  Section 1605 of the UDO provides, in relevant part, that "[n]o use in any district . . . may generate an odor, which is objectionable, or noxious that reaches beyond the property line of the enterprise generating the odor."  R.R. at 401a.

In support of Condition 26, the Board stated in its Remand Decision:

- (Section 1604) MarkWest testified that it would obtain the required permits from PA DEP and the [Environmental Protection Agency (]EPA[)] and reduce emissions by use of state-of-the-art combustion engines (FOF 22-23, 73-74 & Opinion of Cmwlth. Ct. at 15) and the Board found that there would be certain airborne hazardous emissions from the Proposed Facility (Board Opinion at 13 & Opinion of Cmwlth. Ct. at 15).  Pursuant to Section 1604 of the UDO, the Board may require compliance with this condition in order to protect the health, safety and welfare of its citizens.

- (Section 1605) MarkWest also testified that there would be odors associated with the Proposed Facility which would be contained through the use of [Vapor Recovery Units (VRUs)] (FOF 20, 77 & Opinion of Cmwlth. Ct. at 18).  Pursuant to Section 1605 of the UDO, the Board may require compliance with this condition in order to protect the health, safety and welfare of its citizens.

Board Remand Dec. at 6.  In effect, the Board summarized the UDO and MarkWest's commitment, rather than stating precisely why this Condition is necessary.

MarkWest asserts that Condition 26 is unreasonable, unsupported by the record and contrary to law.  MarkWest specifically argues that neither Section 1604 or 1605 of the UDO authorize the Board, "either on [its] face[] or by any reasonable construction of [those] provisions," to impose such third-party testing requirements or

27

otherwise dictate how an approved use meets operational performances standards.[31] *See* MarkWest Br. at 27-37; *see also* MarkWest Reply Br. at 5-7. MarkWest also contends:

> Condition 26 . . . is facially arbitrary, capricious and devoid of any standards. Condition 26 is utterly silent with respect to the substance of the required air quality tests or the methods to be employed and, further, fails to explain why the tests are to be conducted and what MarkWest is to do with the results. What is a 'baseline' air quality test? What is MarkWest testing for? What testing method(s) is MarkWest to utilize? What is MarkWest to do with the tests once completed? Is MarkWest to supply those tests to the Township? If so, when and for what purposes? What is the Township going to do with the test data?
>
> Condition 26, in addition to being facially arbitrary, capricious and devoid of any standards, suffers from many of the same infirmities as Condition 25 and, accordingly, must be stricken by the Court from the Board's June 2015 Decision.

MarkWest Br. at 27-28.

Sections 1604 and 1605 of the UDO clearly do not authorize the Board to require air testing/sampling at the Proposed Facility conducted by an independent third party. The Board also lacks the authority under the UDO or the MPC to prescribe how MarkWest will comply with emission standards. *See Thompson*. Further, Condition 26 lacks record support, especially in light of the Board's specific findings that MarkWest will obtain the necessary DEP and EPA permits and use state-of-the-art equipment and processes to limit emissions from the Proposed Facility. *See MarkWest I*, 102 A.3d at 560; *see also* Condition 20 analysis above. Because Condition 26 is not supported by the UDO/MPC or the record evidence, it is unreasonable, and the Board abused its discretion by imposing it.

---

[31] MarkWest also argues that the APCA preempts Condition 26. However, since we hold that Condition 26 is unreasonable on other grounds, we need not address that specific issue.

## Condition 3 [32]

> MarkWest shall locate the structure enclosing the compressor engines (8 gas or 5 electric) as far away as commercially reasonable from the closest existing residences, but in no event, closer than 750 feet from that residence ([**Public Welfare Provisions**]).

Board Remand Dec. at 3. In its Remand Decision, rather than explain why Condition 3 is necessary, the Board merely declared based on the Public Welfare Provisions that it has the power to impose Condition 3 to protect the health, safety and welfare of the Township's citizens.

The UDO does not expressly limit the number of gas and electric compressor engines MarkWest may utilize (*see* Condition 25 discussion above). Moreover, the UDO does not specify a minimum required distance between the Proposed Facility and nearby residents. Rather, the Township authorized the Proposed Facility by special exception in its I-1 Light Industrial District adjacent to R-1 Low Density and R-2 Medium Density Residential Districts. For the I-1 Light Industrial District, Section 911.E of the UDO prescribes a front yard setback[33] of only 45 feet, and minimum side and rear yard setbacks (from adjoining residential districts/uses) of only 150 feet. *See* R.R. at 292a.

---

[32] The Board claims that since Conditions 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23 and 24 were "authored verbatim or substantially by MarkWest and submitted to the Board and made part of the record[,] . . . MarkWest waived any issues with regard to [those Conditions], as no argument or authority was set forth regarding the same." Board Br. at 24. However, because MarkWest argues that the Board lacked authority to impose *any* of the Conditions, MarkWest has not waived its issues concerning the above-listed Conditions.

[33] "Setback" is defined in Section 202 of the UDO, in relevant part, as "[t]he required minimum horizontal distance between the building line and the related front, side, or rear property line . . . in which no building or accessory structure may be located above ground . . . ." R.R. at 154a.

Accordingly, there is no record or UDO/MPC basis for the Board to impose this Condition. Because there is no UDO/MPC or record basis for Condition 3, it is unreasonable, and the Board abused its discretion by imposing it.

## Condition 4

[VRUs], Vapor Destruction Units (VDUs), or other reasonably[-]available control technology must be placed on all condensate tanks at the [Proposed Facility] (**[UDO] Sections 1604 and 1605**).

Board Remand Dec. at 3. Sections 1604 and 1605 of the UDO prohibit MarkWest from releasing endangering or detrimental amounts of smoke and particulate matter from the Proposed Facility, and/or objectionable or noxious odors beyond MarkWest's property. Rather than specify what portion of the UDO/MPC and the record make Condition 4 necessary, the Board merely summarized the UDO and MarkWest's commitment to satisfy UDO Sections 1604 and 1605.[34]

Neither Section 1604 or 1605 of the UDO specifically define their key terms, and the Board lacks authority to specify in what manner MarkWest must satisfy them. *See Thompson.* However, the record reflects MarkWest's express commitment to limiting emissions from the Proposed Facility in accordance with DEP and EPA requirements. The Board made findings after the 2011 hearings, upon which the *MarkWest I* Court relied, that "MarkWest will install [VRUs] on all condensate tanks, which are designed to capture at least 98% of all emissions" (*MarkWest I* FOF 20); and "smoke and particulate emissions that are not burned off or captured will be subject to DEP air permits . . . (FOF[s] 20-23, 27, 73-74, 76), [and] odors will be captured by VRUs . . . (FOF[s] 20, 77)." *MarkWest I*, 102 A.3d at 566; *see also id.* at 561 ("[O]dors from the Proposed Facility would be contained

---

[34] *See also MarkWest I* FOF 20, 77 ("[O]dors from the Proposed Facility would be contained through the use of VRUs." *MarkWest I*, 102 A.3d at 561.).

through the use of VRUs."). A zoning board does not abuse its discretion by imposing special exception conditions based upon an applicant's testimony. *See Good.* Accordingly, there is record evidence for the Board to impose this Condition. Because Condition 4 is consistent with the Board's UDO/MPC-imposed authority to safeguard the public's health, safety and welfare, and it is based on the record, Condition 4 is reasonable, and the Board did not abuse its discretion by imposing it.

### Conditions 5, 7, 11 and 21

> 5) MarkWest shall provide a spill prevention and control plan to the Township evidencing adherence to all [f]ederal and [s]tate regulations regarding the same (**[UDO] Sections 1608 and 1613**).
>
> 7) MarkWest shall provide training for [Township] first responders and site orientation at its sole cost and expense. Annual training shall be provided (**[UDO] Sections 1608 and 1613**).
>
> 11) MarkWest will provide the Township with copies of any and all plans that deal with procedures to be followed in the event of a spill, fire, or any other emergency at the site and will provide updated copies to the Township as plans and procedures are altered (**[Public Welfare Provisions]**).
>
> 21) MarkWest will work with local emergency responders to outline procedures that nearby residents should observe in the event of an emergency situation at the Compressor Station. MarkWest will provide emergency contact numbers to emergency responders, Township representatives and nearby residents (**[Public Welfare Provisions]**).

Board Remand Dec. at 3-4. In support of these Conditions, the Board reiterated its concern for the health, safety and welfare of the citizens, and summarized MarkWest's commitment to comply with UDO Part 16's Environmental Performance

31

Standards. *See* Board Remand Dec. at 5, 7; *see also* discussion relative to Condition 1 above.

As stated relative to Condition 1, Section 1608 of the UDO prohibits discharge of hazardous materials into the ground and nearby waterways except in accordance with DEP standards. *See* R.R. at 401a. Section 1613 of the UDO makes it unlawful for any developer/property owner or its contractors to place liquid or particulate matter on any Township streets, roads or lanes. *See* R.R. at 403a. The Public Welfare Provisions require the Board to consider the Township's land use plans, and the health, safety and welfare of its citizens and the environment when evaluating special exceptions.

MarkWest declared at the 2011 hearings that it "follow[s] the federal regulations found in 40 [Code of Federal Regulations] Part 120 for spill prevention and countermeasure control." *MarkWest I* R.R. at 168a. MarkWest's senior environmental engineer Nathan Wheldon (Wheldon) testified: "As a professional engineer in the State of Pennsylvania, I write the spill prevention plan and I have to sign and stamp it with my professional engineer's stamp that it meets the federal and state requirements . . . ." *MarkWest I* R.R. at 169a. MarkWest declared that it has a reporting procedure in place if haulers cause spills at its sites. *See MarkWest I* R.R. at 419a. MarkWest attested that it reports facility leaks and follows DEP clean-up procedures. *See MarkWest I* R.R. at 419a, 422a.

MarkWest further explained:

> We have to submit reports to the [s]tate, to the [c]ounty, and the local fire departments every year to make them aware of what we have on site, where it is located, and things like that so they can prepare. . . . [M]any times[,] we will do a training exercise with the local fire department so that if there were to be an emergency[,] they would know how to respond properly.

*MarkWest I* R.R. at 910a. MarkWest expounded:

32

> We have people who just do . . . training with all the fire departments. They do things like provide the first responders turn-by-turn directions. They're the ones who are out there interfacing with the first responders so that . . . whatever Township we operate in it's not a mystery. What we have on our sites, how to respond if there were an incident, how to get there. We're going to great lengths to make sure that everyone is as safe as can be.

*MarkWest I* R.R. at 92a.

Accordingly, the Board made a finding after the 2011 hearings that "[t]he Proposed Facility will employ a myriad of safety features . . . . (Tr. 48, 52-54, 84, 404). . . . MarkWest also will interface with local fire departments and other first responders." *MarkWest I* FOF 67; *see also MarkWest I*, 102 A.3d at 565.

The UDO/MPC do not specifically require that natural gas compressor station operators implement emergency plans and/or conduct site orientations and interface with local first responders. However, with the exception of providing nearby residents with emergency contact numbers, MarkWest made specific unsolicited representations that it would take these measures, which the Board memorialized in these Conditions. *See Good*. Because Conditions 5, 7, 11 and 21 (except for giving nearby residents emergency contact numbers) are consistent with the Board's UDO/MPC-imposed authority to safeguard the public's health, safety and welfare, and are supported by the record evidence, they are reasonable and the Board did not abuse its discretion by imposing them.

## Condition 8

> Except during period of emergency or exigent circumstances, heavy truck traffic accessing the site will be limited to the hours between 7:00 A.M. and 7:00 P.M. MarkWest shall utilize pickup trucks for regular site visits which may occur between the hours of 7:00 P.M. and 7:00 A.M[.] (**[UDO**] **Section 1602.B.3**).

Board Remand Dec. at 3. Section 1602.B.3 of the UDO requires "excessive noise" to be muffled, except "[n]oise from . . . loading/unloading operations when conducted during normal business hours of 7:00 a.m. to 6:00 p.m., excluding Sundays and state[-]approved holidays." R.R. at 400a. Relative to its basis for Condition 8, the Board provided:

> The Board found MarkWest's primary route of travel to the Proposed Facility will be through a single-lane tunnel (FOF 51 & Opinion of Cmwlth. Ct. at 29), licensed haulers will remove water/condensate once or twice a week (FOF 53, 69 & Opinion of Cmwlth. Ct. at 29), daily traffic will consist of an employee monitoring the facility (FOF[s] 69 & Opinion of Cmwlth. Ct. at 29), and no Township roads will be utilized (FOF[s] 70-71 & Opinion of Cmwlth. Ct at 29). . . . Pursuant to Section 1602.B.3 of the UDO, the Board may require compliance with this condition in order to protect the health, safety and welfare of its citizens[.]

Board Remand Dec. at 6.

Initially, the term "excessive noise" is not defined in the UDO. Notwithstanding, the UDO does not expressly limit heavy truck traffic to specific hours, nor authorizes the Board to limit MarkWest's after-hours employee site checks to pickup trucks. Rather, MarkWest must simply ensure that *noise* stemming from loading and unloading at the Proposed Facility occurs only between 7:00 a.m. and 6:00 p.m., and that any vehicles traveling to and from the Proposed Facility do not create "excessive noise" between 6:00 p.m. and 7:00 a.m. Moreover, the Board exceeded its authority by extending the hours for permissible loading/unloading noise established by the Township's Board of Supervisors in Section 1603.B.3 of the UDO from 6:00 p.m. to 7:00 p.m. Finally, there is no record evidence that MarkWest's operations will cause excessive noise. Because Condition 8 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

34

> MarkWest will seek all necessary and applicable additional approvals from [the Township] including Subdivision and Land Development. MarkWest will seek all necessary and applicable building and occupancy permits from the Township ([**UDO**] **Section**[s] **406 and 501**).

Board Remand Dec. at 3. UDO Section 406 requires permits for building construction, and for the use or occupancy of structures after a special exception application has been approved. *See* R.R. at 190a-191a. Section 501 of the UDO further requires approval for land development. *See* R.R. at 195a. In support of Condition 9, the Board stated in its Remand Decision:

- ([UDO] Section 406) MarkWest is required to obtain a building permit prior to the erection, construction, alteration of any building, structure or portion thereof and prior to commencement of improvements ([UDO Section] 406.A). Upon completion of the erection, construction, alteration or improvement, MarkWest is required to apply for an occupancy permit ([UDO Section] 406.C)[.] Pursuant to Section 406 of the UDO, the Board may require compliance with this condition in order to protect the health, safety and welfare of its citizens.

- ([UDO] Section 501) MarkWest intends to engage in a land development, as defined in the UDO. Accordingly, MarkWest is required to comply with the regulations of Part 5 of the UDO. Pursuant to Section 501 of the UDO, the Board may require compliance with this condition in order to protect the health, safety and welfare of its citizens.

Board Remand Dec. at 6.

The UDO clearly requires MarkWest to obtain necessary Township approvals in order to construct the Proposed Facility after the special exception is approved. Section 404.B.2 of the UDO specifically states: "The grant of a Special Exception . . . merely authorize[s] the preparation, filing, and processing of

applications for any permits and approvals that may be required by ordinances of the Township." R.R. at 185a. Section 406.A of the UDO also provides that "a building permit shall be issued only after the [Special Exception] approval[] ha[s] been granted." R.R. at 190a. UDO Section 406.A further warns that a landowner's failure to obtain required permits subjects the landowner to enforcement under UDO Part 19. *See* R.R. at 191a. Accordingly, MarkWest is already bound by the UDO to obtain the necessary permits without Condition 9.

In addition, notwithstanding the Board's representation in Condition 9 that the Board "may require compliance" with UDO Sections 406 and 501, those permits do not fall under the Board's jurisdiction. The Board has the exclusive jurisdiction to hear and adjudicate MarkWest's special exception application. *See Appeal of Fiori*, 635 A.2d 743 (Pa. Cmwlth. 1993). The Board has no role in MarkWest obtaining its post-special exception permits. Under the circumstances, Condition 9 is not warranted, and the Board is not authorized to require MarkWest's compliance with Sections 406 and 501 of the UDO as a condition of its special exception approval. Because Condition 9 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.


### Condition 10

> MarkWest will provide to the Township a URL link which shall provide access to copies of all permits received by [PA DEP], [EPA] and any other institutions or agencies entrusted with protecting the air quality in the Township ([**UDO**] **Section 1604**).

Board Remand Dec. at 3. Section 1604 of the UDO prohibits MarkWest from emitting dangerous or detrimental amounts of smoke and particulate matter from the Proposed Facility.

36

In support of Condition 10, the Board stated in its Remand Decision:

- (Section 1604) MarkWest testified that it would obtain the required permits from PA DEP and the EPA and reduce emissions by use of state-of-the-art combustion engines (FOF[s] 22-23, 73-74 & Opinion of Cmwlth. Ct. at 15) and the Board found that there would be certain airborne hazardous emissions from the Proposed Facility (Board Opinion at 13 & Opinion of Cmwlth. Ct. at 15). Pursuant to Section 1604 of the UDO, the Board may require compliance with this condition in order to protect the health, safety and welfare of its citizens.

Board Remand Dec. at 6.

However, the UDO/MPC do not require MarkWest to supply the URL link for its permits, and there is no record basis for the Board to require MarkWest to do so. Because Condition 10 is not based on a UDO/MPC standard or supported by the record evidence, it is unreasonable, and the Board abused its discretion by imposing it.

## **Condition 12**

MarkWest will enclose or provide a shroud over the flare and/or [volatile organic compound (]VOC[)] control device at the site **([UDO] Section 1606)**.

Board Remand Dec. at 3. Section 1606 of the UDO provides, in relevant part:

No direct glare . . . from . . . high temperature processes, shall be visible from . . . adjacent lots when viewed by a person standing on ground level. Any operation producing intense glare or heat shall be conducted within a completely[-]enclosed building in such a manner so as not to create a public nuisance or hazard.

R.R. at 401a. Relative to Condition 12, the Board stated: "The flare at the site is a 'high temperature process', so the Board may require compliance with this

[C]ondition pursuant to Section 1606 of the UDO . . . . in order to protect the health, safety and welfare of its citizens." Board Remand Dec. at 6-7.

Section 1606 of the UDO prohibits MarkWest's flare from being visible to adjacent neighbors from the ground. Only those operations producing "intense" glare and heat must be fully enclosed. The term "intense" is not defined by the UDO. There is no record evidence that the flare or the VOC control device at the Proposed Facility will produce "intense" glare and/or heat, such that full enclosure is required. Accordingly, the flare and the VOC (if it produces a glare) need only be covered to prevent glare visible to neighbors on the ground of adjacent properties. There is nothing in this record regarding the flare's heat intensity or glare that would support this Condition. Accordingly, there is no record or UDO/MPC basis for the Board to impose this Condition. Because the necessity for Condition 12 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

## Condition 13

> All lighting at the site will be turned off at night except when personnel are on site or during emergency situations, and except when emergency lighting and/or lights are activated by motion detector. MarkWest shall make every effort to point lights downward and inward where practicable (**[UDO] Section 1606**).

Board Remand Dec. at 4. Section 1606 of the UDO states, in pertinent part:

> All on-site lighting of buildings, lawns, and parking areas shall be designed so as not to shine or cause glare in excess of one-half (0.5) foot-candle at any point onto adjacent property . . . . No direct glare, . . . from floodlights . . . shall be visible from . . . adjacent lots when viewed by a person standing on ground level.

38

R.R. at 401a. The Board reasoned only that it "may require compliance with this [C]ondition pursuant to Section 1606 of the UDO . . . . in order to protect the health, safety and welfare of its citizens." Board Remand Dec. at 7.

Section 1606 of the UDO prohibits MarkWest's lighting of the Proposed Facility and its grounds from shining or causing glare in excess of one-half foot candle on neighboring properties, and also proscribes floodlight glare visible to neighbors from the ground. The record lacks evidence that MarkWest's lighting will shine or cause glare in excess of one-half foot candle onto neighboring properties. The Board's mandate that "[**a**]**ll** lighting at the site will be turned off at night" except in limited circumstances is well beyond the UDO's language and the Board's authority to impose. Board Remand Dec. at 4 (emphasis added). Because Condition 13 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

**Condition 14**

> MarkWest, upon reasonable notice, shall arrange for a tour of the facility by any Township representative or resident. MarkWest also agrees to meet with the Township, as reasonably requested, to discuss any matters which involve MarkWest ([**UDO**] **Sections 103 and 404.B.1**).

Board Remand Dec. at 4. Sections 103 and 404.B.1 of the UDO require the Board to take into account protection of the public's health, safety and welfare and preservation of natural resources (UDO Section 103), together with the Township's land use plan and objectives (UDO Section 404.B.1), when deciding whether to grant a special exception application. In support of Condition 14 in its Remand Decision, the Board cites only to its responsibility to protect the public's health, safety and welfare. *See* Board Remand Dec. at 5.

Neither the UDO nor the MPC (or any other law of which this Court is aware) expressly authorizes the Board to require MarkWest to host resident/Township representative tours, or demand meetings to discuss "any matters which involve MarkWest," even if such tours and meetings are "reasonably requested" or "upon reasonable notice." Board Remand Dec. at 4. Although MarkWest may, at its discretion, provide tours and/or meet with Township officials, the Board lacks authority to force or enforce this Condition against MarkWest. Because Condition 14 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

## Condition 15

> MarkWest will utilize the sound and vibration mitigation measures, which are commercially reasonable and available, to meet the 60 dbA standard (**[UDO] Sections 1602.A and 1603)**.

Sections 1602.A and 1603 of the UDO prohibit excessive objectionable noise and vibrations detrimental to the public's health, safety, comfort and welfare. Beyond citing to the two UDO sections, the Board did not explain, contrary to this Court's September 26, 2014 order, why Condition 15 is necessary. Nevertheless, as discussed above with respect to Condition 2, MarkWest has agreed that "activities at the [Proposed F]acility shall not exceed sixty (60) [decibels (dbA)] for more than two (2) hours at the property line." Condition 2; *see also* MarkWest Br. at 42.

As stated above relative to Conditions 2 and 25, the Board is not authorized under the UDO or the MPC to prescribe precisely how MarkWest shall meet the agreed-upon standard. *See Thompson.* Accordingly, because Condition 15 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

40

## Condition 16

> MarkWest will provide landscaping along the front of the compressor pad and undertake efforts to blend the facility into the natural landscape, including but not limited to the use of a custom[-]built structure, with four walls and a roof to wholly enclose all compressor engines. MarkWest will consult the Township with regard to architectural issues; however, any final architectural design or enhancements will be at the sole discretion of MarkWest ([**UDO**] **Sections 1506.B.5 and 1503**).

Board Remand Dec. at 4. Section 1506.B.5 of the UDO requires "a landscape buffer forty (40) feet in width . . . within the required setback distance" when an I-1 Light Industrial District abuts a residential district. R.R. at 395a. Section 1503 of the UDO sets forth the Township's requirements for landscaping plans submitted for incompatible uses, and mandates that non-residential building permit applications must include Township-approved landscaping plans that include landscape buffers for incompatible uses. *See* R.R. at 388a.

Relative to Condition 16, the Board declared:

- (Section 1503) To further ensure compliance with this [C]ondition, the Board may require a Landscaping Plan, pursuant to Section 1503 of the UDO.

- (Section 1506.B.5) MarkWest's Proposed Facility is located in an I-1 [Light Industrial] District and the land surrounding it is zoned R-1 Low Density Residential and R-2 Medium Density Residential. As such, Section 1506.13.5 of the UDO applies and the Board may require compliance with this [C]ondition to enforce it and protect the health, safety and welfare of its citizens.

Board Remand Dec. at 5-6.

MarkWest's special exception application contained a plan for the Proposed Facility, which met the UDO's requirements. *See* R.R. at 123a. Nothing in Sections 1503 or 1506.B.5 of the UDO permits the Board's mandate that MarkWest consult with the Township regarding architectural issues as a condition precedent to a

special exception. Moreover, Section 305.B of the UDO makes it the Township zoning officer's duty to review and issue building (*see* UDO Sections 305.B.1, 305.C.1, 406.B) and construction permits (*see* UDO Section 305.B.2) *after* a special exception has been granted. *See* R.R. at 168a, 191a. Unlike Section 1506.B.5 of the UDO, with which MarkWest must comply, the Board's Condition is vague and beyond its authority. Because Condition 16 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

## Condition 17

> MarkWest will pave or tar and chip the access road[35] from its intersection with Route 980 to the pad fence (**[UDO] Sections 1304.D.1 and 1604**).

Board Remand Dec. at 4. As stated above in Condition 10, Section 1604 of the UDO prohibits MarkWest from emitting dangerous or detrimental amounts of smoke and particulate matter from the Proposed Facility. Section 1304.D.1 of the UDO requires that "driveway areas shall be paved with an impervious surface." R.R. at 372a.

The Board reasoned that since "MarkWest's operation of the Proposed Facility will require access to the site for employees and subcontractors hauling water/condensate (FOF[s] 53, 69 & Opinion of Cmwlth. Ct. at 29)," Board Remand Dec. at 5, the Board may require compliance with UDO Sections 1304.D.1 and 1604 to protect the citizens' health, safety and welfare. *See* Board Remand Dec. at 5-6.

Although the context for the Board's citation to Section 1604 of the UDO (relating to dangerous smoke and particulate matter emissions) in Condition 17 is not readily apparent and the condition is vague, we acknowledge MarkWest's representations during the 2011 hearings that employees and subcontractors will

---

[35] The terms "access," "road," and "access road" are not defined in the UDO or the Board's Remand Decision. However, Section 202 of the UDO defines "driveway" as "[a] private roadway providing access to a street or highway." R.R. at 140a.

42

regularly "[a]ccess [] the Proposed Facility . . . via an access drive on Route 980," *MarkWest I* FOF 70, and "will not require using any 'local' or other Township roads." *MarkWest I* FOF 71. To the extent that the "access road" referenced in Condition 17 refers to the private driveway extending from Route 980 to the Proposed Facility's pad, MarkWest is already obligated by the UDO to pave it "with an impervious surface," which can include bituminous or concrete surfaces. R.R. at 372a. Accordingly, because Condition 17 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

## Condition 18

> MarkWest will meet all [f]ederal and [s]tate regulatory requirements and permit conditions, and will meet with Township representatives and residents, as reasonably requested (**[Public Welfare Provisions]**).

Board Remand Dec. at 4. In its Remand Decision, rather than explain why Condition 18 is necessary, as required by this Court's September 26, 2014 order, the Board merely declared based on the Public Welfare Provisions that it has the power to impose Condition 18 because its purpose is to protect the health, safety and welfare of the Township's citizens.

At the 2011 hearings, MarkWest pronounced that it "[will] comply with" Chapters 105 (regulating earth disturbances and ESCGP-1 application) and 102 (regulating waterways and encroachments) of the DEP's Regulations, and "of course, [] will comply with" Section 1608 of the UDO. *MarkWest I* R.R. at 82a. MarkWest expressed that the Proposed Facility "will be permitted through the DEP as a minor source" (*see MarkWest I* R.R. at 74a, 430a, 440a; *see also* FOFs 22-23, 74), and "the engines must meet all EPA stationary internal combustion standards" (*see MarkWest I* R.R. at 74a). MarkWest added: "At any time the EPA would reduce the limits of

43

acceptable benzene emissions or concentrations MarkWest would meet that standard. And if that included having to replace engines or anything like that, we would do that to meet the applicable standards." *MarkWest I* R.R. at 455a. MarkWest represented: "We do file with the State. We have our air permits . . . . We also have Serra Two reports . . . ." *MarkWest I* R.R. at 429a-430a. MarkWest further declared that it will comply with the state fire marshal's fire protection codes for bulk chemical storage. *See MarkWest I* R.R. at 351a. Accordingly, the Board has specifically found that MarkWest will obtain the necessary DEP and EPA permits and use state-of-the-art equipment and processes to limit emissions from the Proposed Facility. *See MarkWest I*, 102 A.3d at 560; *see also* discussions of Conditions 4, 20 and 26 above. Therefore, MarkWest is already legally obligated to meet all state and federal regulatory requirements in order to operate the Proposed Facility.

With respect to Township and public meetings, as stated above relative to Condition 14, although MarkWest may, at its discretion, meet with Township officials and/or residents as reasonably requested, the Board lacks authority to force or enforce this Condition against MarkWest. Because Condition 18 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

**Condition 19**

> If at any time the [Township's] Board of Supervisors or the [Board] reasonably believe that the citizens of the Township would be subjected to harmful byproducts from the [P]roposed [Facility] that place residents in immediate and substantial danger, the Township representatives reserve the right to immediately request that the use be stopped until the situation is remedied to the Township's reasonable satisfaction (**[Public Welfare Provisions]**).

Board Remand Dec. at 4. The Board based this Condition on its duty to protect the health, safety and welfare of the Township's citizens.

Although nothing in the UDO or the MPC prohibits the Board or the Township from simply requesting that MarkWest cease operations at the Proposed Facility, neither has the authority to simply order that the "use be stopped until the situation is remedied to the Township's reasonable satisfaction[.]" Board Remand Dec. at 4. This Court has held that "[t]he equitable question of nuisance abatement should not cloud the issue of the legality of [the] use for zoning purposes." *Mehring v. Zoning Hearing Bd. of Manchester Twp.*, 762 A.2d 1137, 1142 (Pa. Cmwlth. 2000) (quoting *Sanko v. Rapho Twp.,* 293 A.2d 141, 143 (Pa. Cmwlth. 1972)). Thus, not only is special exception approval not the appropriate stage during which to address nuisance abatement, but the Board and the Township lack the authority to simply order that the "use be stopped until the situation is remedied to the Township's reasonable satisfaction[.]" Board Remand Dec. at 4. Because Condition 19 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

### Condition 22

> During normal operations, MarkWest shall not open any doors, windows, or other similar structural features of the [Proposed Facility] for the purpose of cooling the structure housing or the compressor engines (**[Public Welfare Provisions]**).

Board Remand Dec. at 4. In its Remand Decision, the Board merely declared that it has the power to impose Condition 22 based on the Public Welfare Provisions because its purpose is to protect the health, safety and welfare of the Township's citizens.

45

The Board does not explain what purpose it seeks to achieve in this Condition nor does the Condition state the same. To the extent that Condition 22 is intended to prevent noise, MarkWest has agreed that "activities at the [Proposed F]acility shall not exceed sixty (60) [decibels (dbA)] for more than two (2) hours at the property line." Board Remand Dec. Condition 2; *see also* MarkWest Br. at 42. Moreover, the Board lacks authority under the UDO or the MPC to prescribe precisely how MarkWest shall limit noise at the Proposed Facility. *See Thompson*. Because Condition 22 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

## Condition 23

> MarkWest shall install no more than eight (8) tanks at the [Proposed Facility] to house water and condensate (**[Public Welfare Provisions]**).

Board Remand Dec. at 4. The Board failed to specify in its Remand Decision why Condition 23 is necessary. It merely declared that it has the duty to protect the health, safety and welfare of the Township's citizens.

Neither the UDO nor the MPC limit the number of condensate tanks MarkWest may install at the Proposed Facility. In fact, Section 2 of Township Ordinance No. 2-2010 defines "Natural Gas Compressor Station" to include "one or more gas compressors, associated buildings, pipes, valves, tanks and other equipment." R.R. at 461a. In addition, the Board lacks authority under the UDO or the MPC to prescribe precisely how MarkWest shall operate the Proposed Facility. *See Thompson*. Because Condition 23 is not supported by the UDO/MPC or the record, it is unreasonable, and the Board abused its discretion by imposing it.

## Condition 24

> MarkWest shall enclose the [Proposed Facility] in a chain-link fence, or other fencing as deemed commercially reasonable in an effort to protect the health, safety, and welfare of the residents (**[Public Welfare Provisions]**).

Board Remand Dec. at 5. Rather than explain why Condition 24 is necessary, the Board merely declared that it has the power to impose Condition 24 based on the public health, safety and welfare of the Township's citizens.

MarkWest represented in its special exception application, that the Proposed Facility would be "fully enclosed by a fence with a secure gate." *MarkWest I* R.R. at 198a. At the 2011 hearings, MarkWest stated, and the Board made findings, that there will be a locking gate for an 8-foot chain-link fence topped with barbed wire surrounding the Proposed Facility. *See MarkWest I*, 102 A.3d at 565; *see also MarkWest I* R.R. at 85a, 114a; FOFs 54, 68. Accordingly, the Board memorialized MarkWest's representations in this Condition. *See Good*. Because Condition 24 is consistent with the Board's UDO/MPC-imposed authority to safeguard the public's health, safety and welfare, and is supported by the record evidence, it is reasonable, and the Board did not abuse its discretion by imposing it.

## Conclusion

Based on the foregoing, we affirm the trial court's order relative to the first sentence of Condition 2 and all of Conditions 4, 5, 7, 11, 21 (except for giving nearby residents emergency contact numbers) and 24, and reverse the trial court's order with respect to the remaining portions of Condition 2, and all of Conditions 1, 3, 6, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 25 and 26.

For all of the above reasons, the trial court's order is affirmed in part and reversed in part.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

MarkWest Liberty Midstream          :
and Resources, LLC,                 :
                       Appellant          :
                                 :
                v.                 :
                                 :
                                 :
Cecil Township                      :   No. 1809 C.D. 2016
Zoning Hearing Board                :

## O R D E R

AND NOW, this 23rd day of March, 2018, the Washington County Common Pleas Court's (trial court) October 5, 2016 order relative to the first sentence of Condition 2 and all of Conditions 4, 5, 7, 11, 21 (except for giving nearby residents emergency contact numbers) and 24 is AFFIRMED. The trial court's order with respect to the remaining portions of Condition 2 and all of Conditions 1, 3, 6, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 25 and 26 is REVERSED.

Accordingly, MarkWest Liberty Midstream and Resources, LLC's (MarkWest) application for special exception, with the following Conditions, is GRANTED:

Condition 1 (formerly Condition 2):

Once operational, normal operations and activities at the Proposed Facility shall not exceed sixty (60) decibels (dbA) for more than two (2) hours at the Property line.

Condition 2 (formerly Condition 4):

Vapor Recovery Units, Vapor Destruction Units, or other reasonably-available control technology must be placed on all condensate tanks at the Proposed Facility.

Condition 3 (formerly Condition 5):

MarkWest shall provide a spill prevention and control plan to Cecil Township (Township) evidencing adherence to all federal and state regulations regarding the same.

Condition 4 (formerly Condition 7):

MarkWest shall provide training for the Township's first responders and site orientation at its sole cost and expense. Annual training shall be provided.

Condition 5 (formerly Condition 11):

MarkWest will provide the Township with copies of any and all plans that deal with procedures to be followed in the event of a spill, fire, or any other emergency at the Proposed Facility and will provide updated copies to the Township as plans and procedures are altered.

Condition 6 (formerly Condition 21):

MarkWest will work with local emergency responders to outline procedures that nearby residents should observe in the event of an emergency situation at the Proposed Facility. MarkWest will provide emergency contact numbers to emergency responders and Township representatives.

Condition 7 (formerly Condition 24):

MarkWest shall enclose the Proposed Facility in a chain-link fence, or other fencing as deemed commercially reasonable in an effort to protect the health, safety, and welfare of the residents.

_____
ANNE E. COVEY, Judge

MarkWest Liberty Midstream and : 
Resources, LLC, : 
              Appellant : 
              :    No. 1809 C.D. 2016 
         v. : 
              :    Argued: April 6, 2017 
Cecil Township Zoning : 
Hearing Board : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge 
                HONORABLE PATRICIA A. McCULLOUGH, Judge 
                HONORABLE ANNE E. COVEY, Judge 

**_OPINION NOT REPORTED_**

CONCURRING AND DISSENTING 
OPINION BY JUDGE McCULLOUGH             FILED: March 23, 2018

        The benefits of legislation allowing for oil and gas drilling in this Commonwealth have long been recognized. It has provided employment opportunities and alternative sources of income for cash-strapped farmers and other property owners that can benefit from leasing their land for these purposes. To ensure the benefits of the industry are thoughtfully balanced with the issues that arise concerning township and private property, the local governing bodies are charged with overseeing the implementation of local ordinances which promote the health, safety, and welfare of their residents.

        Here, this Court on remand provided that the Cecil Township Zoning Hearing Board (Board) should attach, within the confines of the Cecil Township Unified Development Ordinance's (UDO) objective standards and criteria, what

terms and conditions are needed to attach to the special exception application in order to ensure compliance with the UDO and explain why the term or condition is necessary. As aptly noted by the Court of Common Pleas of Washington County (trial court), "it is well settled that when courts of this Commonwealth are faced with interpreting statutory language, they afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation." *MarkWest Liberty Midstream & Resources, LLC v. Cecil Township Zoning Hearing Board Range Resources - Appalachia, LLC*, 102 A.3d 549, 555 (Pa. Cmwlth. 2014), *appeal denied*, 113 A.3d 281 (Pa. 2015) (citing *Winslow-Quattlebaum v. Maryland Insurance Group*, 752 A.2d 878, 881 (Pa. 2000)). Indeed, "It is a fundamental principle of administrative law that an administrative agency's interpretation of the statute it is charged to administer is entitled to deference on appellate review absent 'fraud, bad faith, abuse of discretion, or clearly arbitrary action." *Id.* (citations omitted).

Moreover, it is clear in the Pennsylvania Municipalities Planning Code (MPC)[1] and UDO that it is incumbent upon Cecil Township (Township), via its Zoning Hearing Board, to meet the objectives of health, safety, and general welfare for its residents by providing for emission standards to prevent pollution of air and water and to safeguard and preserve the community and value of land as it deems necessary. This is clearly prescribed in the Majority as follows:

> The law is clear that "[the Board's] authority is defined by the MPC and the [UDO]." *HHI Trucking & Supply, Inc. v. Borough Council of Borough of Oakmont*, 990 A.2d 152, 160-61 (Pa. Cmwlth. 2010); *see also* Section 303.D

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101 - 11202.

of the UDO (R.R. at 166a). Section 912.1 of the MPC[2] states, in pertinent part: "In granting a special exception, the [B]oard may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of [the MPC] and the zoning ordinance." 53 P.S. § 10912.1. Section 404.B.1.1[3] of the UDO specifically provides that "the Board may attach reasonable conditions and safeguards necessary to protect the public health, safety, and welfare." R.R. at 185a.

. . .

This Court has expressly held that "[a] board is permitted to impose conditions on the use of a property to mitigate any potential adverse impacts from the proposed use, and is required to reduce the negative impacts to an acceptable level if it can, by imposing conditions." *In re Appeal of Maibach, LLC*, 26 A.3d 1213, 1216 (Pa. Cmwlth. 2011).

(Slip op. at 6-7.) Further, the Majority noted that:

In considering [MarkWest Liberty Midstream & Resources, LLC (MarkWest's)] application, the Board was specifically mandated by Section 404.B.1 of the UDO to consider the Township's land use plan and objectives, whether the proposed use complied with UDO Part 16 (relating to environmental performance standards), the impact on the environment and adjacent properties, and whether the proposed use would be equivalent to those permitted in the Township by right. *See* R.R. at 184a. Section 103 of the UDO specifies that the Township's community development objectives are intended, *inter alia*, to: "[p]rotect and promote the public health, safety, and general welfare" (R.R. at 129a); "[p]rovide for performance standards for the emission of noise, gases,

---

[2] Section 912.1 of the MPC was added by Section 91 of the Act of December 21, 1988, P.L. 1329.

[3] The UDO is incorrectly numbered and, thus, has two UDO Section 404.B.1 provisions. *See* R.R. at 184a-85a. This reference is to the second provision.

> heat, vibration, or particulate matter into the air or ground or across lot lines" (R.R. at 130a); "[p]revent the pollution of air and watercourses[,] . . . safeguard the water table[,] and encourage the wise use and management of natural resources in order to preserve the community and value of the land" (R.R. at 130a); and, "[p]reserve the natural beauty and topography of the Township and ensure appropriate development with regard to these natural features" (R.R. at 130a).

(Slip op. at 8-9.)

The conditions imposed by the Board in this case not only emanate from the UDO and MPC requirements, but would serve to alleviate the burden and standard of proof issues with which objecting property owners and gas companies have been confronted in this industry. For instance, by requiring the gas company to test water samples prior to drilling, it would enhance the respective company's or property owners' assertion that the drilling did or did not have a negative impact on same and the degree to which it did or did not. Currently, this type of litigation involves a morasse of expert opinions and testing "after the fact." Rather than conjecture as to how, whether or to what extent the property was negatively impacted, the parties and the Department of Environmental Protection (DEP) would have concrete information which could minimize the often-protracted litigation.

Thus, while I concur with the well-written Majority in its affirmance of the first sentence of Condition 2 and Conditions 4, 5, 7, 11, a portion of 21, and 24, I agree with the trial court, for the reasons set forth in its opinion, that the remaining Conditions, or parts thereof, imposed by the Board are a reasonable means to mitigate potential adverse impacts arising from the operation of the compressor station and are not an abuse of discretion. Based on this record, the Conditions imposed by the Board meet the express requirements of the MPC and the Township's UDO as expressly noted by the Board in its decision. I discern no

evidence of fraud, bad faith, abuse of discretion or clearly arbitrary action; hence, I respectfully dissent to the Majority opinion in this regard and would affirm the trial court in its entirety.

_____
PATRICIA A. McCULLOUGH, Judge